JACK L. HARGROVE *et al.*, Plaintiffs-Appellants, *v.* GERILL CORPORA-TION *et al.*, Defendants-Appellees.

Second District   No. 83—736

Opinion filed June 6, 1984.

Alexander R. Domanskis and Michael H. King, both of Ross & Hardies, of Chicago, and Aldo E. Botti and John N. Pieper, both of Botti, Marinaccio & Maksym, of Oak Brook, for appellants.

Frederic J. Artwick, of Sidley & Austin, Jay Statland, of Murphy & Boyle, and John T. McGarry, all of Chicago, and John Franklin Rosch, Ltd., of Glen Ellyn, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs appeal from the dismissal by the circuit court of Du Page County of their complaint for an equitable mortgage. Because the complaint fails to state a cause of action, we affirm.

On July 29, 1983, plaintiffs Jack L. Hargrove and Jack L. Hargrove Builders, Inc. (Hargrove Builders), filed the complaint in the present action to foreclose upon an equitable mortgage. Named as defendants were Gerill Corporation, Gerald A. Heinz, and John F. Rosch ("defendants" collectively), as well as numerous other parties who, though having interests in the property sought to be foreclosed, are not alleged to have been party to the contract or debt asserted to have given rise to the equitable mortgage.

The complaint alleges the following facts. Gerill Corporation and Hargrove Builders entered into a partnership for the development of certain parcels of real estate in Woodridge, Illinois (Woodridge properties), which were owned by Gerill Corporation. In return for Hargrove Builders' undertaking the primary role in the development of the Woodridge properties, Hargrove Builders was given a 50% beneficial interest in the properties as security. In order to provide funding for the partnership, plaintiffs borrowed about $352,000 from Concordia Federal Savings & Loan Association. This "Concordia loan" was secured by a mortgage on property in Crestwood, Illinois, owned solely by plaintiffs. By December 1980, the partnership owed plaintiffs $200,000 in addition to its obligations regarding the Concordia loan. On March 1, 1981, plaintiffs and defendants entered into an agreement through which Hargrove Builders withdrew from the partnership and its place was taken by John Rosch. By the terms of the agreement, Hargrove Builders agreed to convey its interest in the Woodridge properties to Rosch, defendants agreed to assume all of plaintiffs' liabilities relative to the Woodridge properties, and Rosch agreed to pay Hargrove Builders $200,000. Despite this agreement, defendants defaulted on their promise to pay plaintiffs' liabilities, including the Concordia loan, resulting in a threatened mortgage foreclosure against Hargrove Builders' Crestwood property.

Pending at the time of the dismissal of the present action was a consolidated action in Du Page County Circuit Court involving many of the same facts and issues. Originally filed in the circuit court of Cook County, an action by the present plaintiff against some of the

present defendants for injunctive and other relief was transferred to Du Page County as No. 82 CH 1135 and was consolidated with No. 82 CH 1032, an action by the present defendants against the present plaintiffs and Concordia Federal Savings and Loan Association.

Plaintiffs first contend that the procedure followed by the trial court in dismissing their complaint was improper and requires reversal. Plaintiffs protest three aspects of that procedure: (1) the lack of sufficient notice of the motion, (2) the fact that the motion was heard and granted by a judge other than the one assigned to the case, and (3) the fact that the motion was argued and granted on a basis different from the one upon which it was brought.

On August 9, 1983, one of defendants filed a motion to dismiss and a petition for change of venue. The motion to dismiss cited subsection (a)(3) of section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(3)) and alleged that the present action was virtually the same as the one previously filed. Counsel for the parties appeared before Judge John S. Teschner of the Du Page County Circuit Court on August 9 with regard to both the present action (No. 83 CH 736) and the related one referred to in the motion to dismiss (Nos. 82 CH 1032 and 82 CH 1135). While Nos. 82 CH 1032 and 82 CH 1135 had been assigned to Judge Teschner, the present case had been assigned to Judge S. Bruce Scidmore of the same court. At the outset of the hearing, counsel for plaintiffs stated the following:

"If I could, your Honor, for the record, perhaps set out an agenda of the different things that are—why we're here before you this afternoon.

\* \* \*

In addition, we filed a couple weeks ago a complaint for equitable foreclosure, which was assigned to Judge Scidmore.

We received yesterday from Mr. Rosch a motion to transfer the case from Judge Scidmore.

And, in addition, we received yesterday a motion to dismiss our equitable foreclosure case.

As I indicated earlier, your Honor, the motion to dismiss the equitable foreclosure case was received yesterday without proper notice.

Because we are interested in proceeding expeditiously with this case; indeed, critical to the Hargrove contract action [No. 82 CH 1135] before you now is an early trial date because of the foreclosure of the Concordia loan, which we've alleged the contract between the parties required the assumption of those

liabilities, so we are willing to go forward with oral argument today, if you would wish, your Honor, on the motion to dismiss the equitable foreclosure as well."

Argument before Judge Teschner then took place in which counsel for defendants sought dismissal on the grounds both that a similar action was pending and that the complaint failed to state a cause of action. Further, counsel for defendants asked the court to consider, with regards to the wording of fees, the ulterior motives of plaintiffs for filing the suit. The court granted the motion to dismiss and, when asked to indicate the grounds for its decision, stated the following:

"I think it's clear that you do not state a cause of action.

I think, further, that there is a reasonable inference that the action was intended to try and bring some clout.

The purchasers are entitled to this summary judgment.

There is not a basis sufficient to establish any equitable lien for any amounts due Mr. Hargrove."

In its written dismissal order of August 9, the trial court noted that plaintiffs' attorney agreed to the hearing *instanter* despite the short notice. It ordered that the cause was thereby reassigned to Judge Teschner for the hearing *instanter* and that it was dismissed with prejudice.

On September 6, 1983, after notice of this appeal had been filed, counsel for the parties appeared before Judge Teschner for a hearing on plaintiffs' motion to stay the order of dismissal and to set a bond. During the course of that hearing, the court gave clear indication that its dismissal was based both on the pendency of the related action and on the failure to state a cause of action. The following dialogue then took place:

"MR. KING [counsel for plaintiffs]: Your Honor, with all due respect, the record is quite clear that not only was none of that brought before the Court in connection with the Court's dismissal of the equitable foreclosure action, but with all due respect, the Court is unaware of the merits of this action except by way of the discussions that have been had before the Court.

Discovery has not been completed.

Mr. Rosch's deposition has not been completed.

MR. ROSCH: Mr. King, I believe it's my—

MR. KING: Production of documents has not been completed. And there is absolutely no factual basis whatever for the Court to dismiss an action on the merits.

THE COURT: Your complaint could not have stated any claim for equitable relief. That's why I denied—or I granted the

motion to dismiss, plus did so with prejudice."

Generally, a party desiring to preserve a question for review must make appropriate objection in the court below and the failure to object to preserve a question for review constitutes a waiver. (*Vee See Construction Co. v. Luckett* (1981), 102 Ill. App. 3d 444, 430 N.E.2d 91.) More particularly, where it is contended that the procedure of the trial court is in error, the failure to object to such procedure in the trial court precludes its review. (*Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95.) Also, failure to object at any time before the trial court to the form or substance of a motion to dismiss bars an appellant from raising that issue for the first time on appeal as grounds for reversal. (*Thornton v. Williams* (1980), 89 Ill. App. 3d 544, 412 N.E.2d 157.) Here, plaintiffs failed to raise sufficient objection before the trial court to any of the three aspects of the dismissal procedure which they now challenge.

With regard to the lack of notice, plaintiffs' counsel observed that there had been improper notice, but indicated a willingness to go ahead with the hearing that day. The trial court's order contained the specific finding that plaintiffs' attorney agreed to a hearing *instanter* despite the 24-hour notice.

With regard to the fact that the motion was addressed to and was granted by Judge Teschner even though this case had been assigned to Judge Scidmore, again plaintiffs' attorney noted the assignment of this case and then expressed a willingness to go forward with the hearing if Judge Teschner agreed. Judge Teschner in his order specifically reassigned the case to himself, as chief judge of the division, for the hearing *instanter*. Questions concerning the propriety of a particular judge's hearing a case cannot be raised for the first time in the appellate court. *O'Brien v. Eustice* (1939), 298 Ill. App. 510, 19 N.E.2d 137.

With regard to the basis of the motion to dismiss differing from the basis of the order of dismissal, counsel for plaintiffs raised no objection despite ample opportunity to do so. Plaintiffs' counsel remained silent both when opposing counsel raised the argument at the hearing that the complaint failed to state a cause of action and when the trial court indicated that its dismissal order was based, at least in part, upon that same argument. Attorney King's remarks at the September 6, 1983, hearing, even if they could be construed as an objection to the basis of the court's dismissal order, were made after the complaint was dismissed and the notice of appeal had been filed. That was too late to be considered a timely objection. See *Coleman v. Hinsdale Emergency Medical Corp.* (1982), 108 Ill. App. 3d 525, 531,

439 N.E.2d 20, 25.

■ *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360, upon which plaintiffs rely, is distinguishable in that the plaintiff in that case initially raised its objections to the trial court's procedure before the trail court itself, rather than raising the objections for the first time on appeal. We hold that plaintiffs have not properly preserved this issue for review.

Plaintiffs' second contention is that their complaint does state a cause of action to foreclose an equitable mortgage and should not have been dismissed for failure to do so. It is plaintiffs' theory that they retain a lien in equity upon the Woodridge properties because defendants, by defaulting on the Concordia loan, failed to satisfy the considerations stated in the March 1 agreement by which plaintiffs agreed to convey their interest in the Woodridge properties.

While the complaint seeks to foreclose an "equitable mortgage," plaintiffs at various times speak in terms of an "equitable lien." With regard to the former, it has been stated:

> "An equitable mortgage arises in a situation where money is loaned or credit given in reliance upon the security of property of the debtor, but pledged by him in such manner as not to be enforceable as a mortgage at law. 'The earliest form of equitable mortgage is found in cases of conveyances, absolute in form, made in fact to secure a loan but unenforceable as a mortgage at law because of the absence of a defeasance clause ***. Equity intervenes in these cases for exactly the same reason which caused equitable relief in legal mortgage cases, *viz.*, to relieve from the forfeiture otherwise resulting if the grantee should refuse to reconvey on tender to him of the debt.' (Walsh, Mortgages, pp. 34-35.)" *Wilkinson v. Johnson* (1963), 29 Ill. 2d 392, 398-99; see also *Hibernian Banking Association v. Davis* (1920), 295 Ill. 537, 543; *Trustees of Zion Methodist Church v. Smith* (1948), 335 Ill. App. 233, 236, 81 N.E.2d 649, 650.

By contrast, an equitable lien has been described as follows:

> "An equitable lien is the right to have property subjected, in a court of equity, to the payment of a claim. It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or encumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. [Citations.]

Equity recognizes, in addition to the personal obligation, in some cases, a peculiar right over the thing concerning which a contract deals, which it calls a 'lien,' and which, though not property, is analogous to property, by means of which the plaintiff is enabled to follow the identical thing and to enforce the defendant's obligation by a remedy which operates directly upon that thing." (*Watson v. Hobson* (1948), 401 Ill. 191, 201.) Illinois has recognized equitable liens which arise wholly from a consideration of right and justice even in the absence of an express agreement, such as where a tenant has made improvements in order to restore a building to use, where one of the joint tenants has made permanent improvements upon property which has added to its value, or where a vendor's lien exists. *Oppenheimer v. Szulerecki* (1921), 297 Ill. 81; *Slusarz v. Slusarz* (1958), 18 Ill. App. 2d 25, 151 N.E.2d 411.

Thus, while the terms are closely related, "equitable lien" appears to be a more inclusive term than "equitable mortgage," which in all instances requires an affirmative pledge of property as security for a debt. Because of our mandate to construe pleadings liberally with a view to doing substantial justice (Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c)), we do not confine our construction of the complaint as being necessarily limited to the equitable mortgage doctrine.

■ The essential elements of all equitable liens are (1) a debt, duty or obligation owing by one person to another and (2) a *res* to which that obligation fastens. (*Jacobsen v. Conlon* (1973), 14 Ill. App. 3d 306, 302 N.E.2d 471; *Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 206 N.E.2d 117.) The obligation that the complaint alleges is owing by defendants to plaintiffs is the unfulfilled promise of defendants to pay off the Concordia loan. The *res* to which the complaint seeks to fasten that obligation is the Woodridge properties.

However, the record shows that the property interest of the contracting defendants in the Woodridge properties was that of beneficiaries in land trusts at the Beverly Bank. The Beverly Bank, as trustee of the land trusts, holds legal and equitable title to the Woodridge properties. (See *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479.) While the Beverly Bank is a named defendant, it was not a party to the contract or conduct that is alleged to have given rise to the equitable lien.

Despite plaintiffs' representations to the contrary on appeal, the complaint clearly seeks to enforce a lien against the real property itself, not the beneficial interests. It is alleged that defendants' conduct entitles plaintiffs to an equitable mortgage on the Woodridge proper-

ties and that the estate conveyed by the mortgage was an "equitable right to fee simple interest in the Woodridge properties." The "mortgaged premises" are legally described in terms of the real estate involved rather than the beneficial interest in the land trusts. The "owners of the mortgaged premises" are recited to include all the named defendants, including the Beverly Bank as trustee. Most significantly, the complaint prays that the real estate itself be sold to satisfy the sum due on the Concordia loan.

■ At best under the facts alleged in the complaint, equity might attach the asserted obligation to the contracting parties' beneficial interests in the land trusts. In a land trust, the legal and equitable title lies with the trustee and the beneficiary retains only a personal property interest. (*In re Estate of Alpert* (1983), 95 Ill. 2d 377; *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479.) A lien on a beneficiary's interest in a land trust is not a lien on the real property itself. (See *In re Estate of Alpert* (1983), 95 Ill. 2d 377; *Shefner v. University National Bank* (1976), 40 Ill. App. 3d 978, 353 N.E.2d 126; *Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 206 N.E.2d 117; *In re Romano* (N.D. Ill.1977), 426 F. Supp. 1123, 1128, *modified without published opinion sub nom. Citizens Bank & Trust Co. v. Romano* (7th Cir. 1980), 618 F.2d 109.) Because the complaint seeks to enforce a lien on the real property itself, it does not state a cause of action and was properly dismissed.

By this holding, we do not suggest answers for certain questions raised by the parties: whether it is possible to impose an equitable lien upon a beneficial interest in a land trust and, if so, under what conditions. Rather, our holding is predicated solely on the facts that the obligation alleged by the plaintiffs was owed by the contracting defendants and that those defendants did not possess the property interest upon which plaintiffs sought to impose their lien.

Plaintiffs' third contention is that their complaint should not have been dismissed on the basis of the pendency of another action between the same parties for the same cause. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(3).) Since we affirm the dismissal on the basis of a failure to state a cause of action, we need not consider this contention.

The order of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.