FRANK CUNIS, a minor, by his next friend, WILLIAM CUNIS, individually and for the use of WILLIAM CUNIS *et al.*, Plaintiff-Appellants, *v.* JAMES M. BRENNAN *et al.*, Defendant-Appellees.

(Nos. 54252, 54353 cons.;

First District—August 3, 1972.

*Rehearing denied September 14, 1972.*

John B. Schwartz, of Mitgang, Levine & Schwartz, of Chicago, for appellants.

Baker & McKenzie, of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

In a personal injury action against the Village of LaGrange, hereinafter referred to as the defendant, and others, the trial court granted defendant's motion to dismiss the minor plaintiff's second amended complaint for failure to state a cause of action. The plaintiff appeals this dismissal.

We reverse and remand.

The relevant facts are as follows: On December 15, 1967, the plaintiff, a minor, was riding as a passenger in a northbound automobile on Brainard Street within the defendant village. At the intersection of Brainard and Ogden the car in which plaintiff was riding was struck by another car, driven by one James Brennan, who was proceeding westbound on Ogden. The resulting impact caused plaintiff to be ejected from the vehicle and hurled upon the parkway (the area between the sidewalk and curb) at the northwest corner of the intersection. Upon landing on the parkway plaintiff's leg was impaled upon a sharp, rusty object protruding from the ground. This object was later identified as the remains of a gas or water drain pipe. It was located at a point approximately 4½ feet west of the west curb of Brainard and 5½ feet north of the north edge of the north sidewalk of Ogden.

The resulting injury sustained by the plaintiff necessitated the amputation of the impaled leg. The plaintiff, acting through his father as next

friend, brought suit against various parties including the instant defendant. The gist of plaintiff's complaint was that the defendant was under a duty to maintain its sidewalks and parkways in a safe condition. Plaintiff alleged a breach of this duty as evidenced by the presence of the rusty, defective and dangerous drain pipe and that this breach was a proximate cause of his injuries. The remainder of the complaint sought to allege the additional necessary elements of a cause of action for negligence.

■■ The only question presented on this appeal is whether the plaintiff's complaint states a good cause of action. In attempting to answer that question, it is well settled that by virtue of its motion to dismiss the defendant admits the truth of all the well pleaded facts in the plaintiff's complaint but not any of the conclusions therein. *Sundin v. Hughes* (1969), 107 Ill.App.2d 195, 246 N.E.2d 100.

On appeal the plaintiff urges that his complaint contained sufficient allegations to state a cause of action. The defendant urges the opposite and argues specifically that it had no duty of care with regard to the instant plaintiff and further that the presence of the alleged hazardous object was not the proximate cause of the plaintiff's injuries.

In support of its position that no duty of care was owed to the instant plaintiff, defendant argues that its duty is determined by the character of the use plaintiff made of its parkway. In other words, defendant argues that a municipality has a duty to maintain its streets and parkways so that they will be reasonably safe for the purpose for which they were intended and no more. For example, since the purpose of sidewalks is to accommodate pedestrian travel, a municipality has fulfilled its duty if its sidewalks are reasonably safe for that purpose. It is defendant's position that parkways are devoted to the planting of grass and trees and for placement of fire hydrants, telephone poles, *etc.*, but not as a "landing place" for ejected automobile occupants.

The defendant makes an additional argument which is, we think, simply a restatement of his first argument in more traditional terms. That is, it was under no duty to anticipate extraordinary or unforeseeable happenings or to provide against every possible danger.

■■ It is a general maxim of law, repeated in cases too numerous to cite, that it is the duty of a municipal corporation to exercise ordinary care to keep its streets and sidewalks reasonably safe for persons exercising ordinary care. In Illinois this duty applies to parkways as well as streets and sidewalks. *Caruso v. City of Chicago* (1934), 278 Ill.App. 247.

Under the allegations of plaintiff's complaint, it is clear that the instant defendant failed that duty by allowing a clearly dangerous instrumentality to remain on its parkway. However, defendant would have us

restrict its accountability insofar as the instant plaintiff is concerned, because his use of the parkway was allegedly not a characteristic or foreseeable use thereof. We disagree.

We recognize the general rule that it is the duty of a municipal corporation to exercise ordinary care to keep its streets and sidewalks reasonably safe for persons exercising ordinary care but that a municipality is not an insurer against accidents or liable for every accident occurring within its limits. (*Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53.) However, we also recognize that even under the most liberal analysis, the existence of this obviously dangerous and defective instrumentality on its parkway raised a serious question as to defendant's negligence. To say as a matter of law that defendant owed no duty of care to the plaintiff because the instant facts point up an uncharacteristic or unforeseeable use is, we submit, too rigid an application of the concept of foreseeability. Surely, if there can be said to be any reasonably foreseeable categories of people who would make use of a parkway, disregarding for the moment the manner of that use, those categories would be pedestrians who in most instances use the sidewalk and passengers or operators of motor vehicles who would otherwise use the street. Is it unforeseeable, as a matter of law, that a pedestrian would stray from the sidewalk to the parkway to shortcut his journey? Defendant, on oral argument, conceded it was not but would allow for no more imaginative usage of the parkways. We do not agree. Is it unforeseeable, as a matter of law, that small children would stray from the sidewalk to play on the parkway or that in the everyday events of life an individual would be pushed, forced, trip or in some other way take leave of the sidewalk to come upon, land or fall on the parkway? Is it unforeseeable, as a matter of law, that the occupants of motor vehicles would not alight their vehicles onto a parkway or use the many small driveways that dot the parkways to gain entry onto private property or to turn their vehicles around? Is it unforeseeable, as a matter of law, that in a time when auto accidents are an all too well known and frequent occurrence, that an injured occupant would, if able, take leave of his helpless and perhaps potentially dangerous vehicle and go upon the parkway to await aid, or if such occupant was not able that he would be taken and placed upon the parkway to be safe from further injury while help was summoned? We need pursue this litany of examples no further. We think the answer to all of the above examples is that such events cannot be adjudged unforeseeable as a matter of law. The word "duty" is not sacred. It is simply a word by which we state a conclusion as to whether or not the plaintiff's interests are to be afforded protection against the defendant's negligence. We think that under the instant facts,

plaintiff's complaint sufficiently raises the issue of whether defendant owed a duty of due care to the plaintiff.

Defendant's remaining argument in support of the granting of the motion to dismiss is that the defective pipe was not the proximate cause of the plaintiff's injuries. In support of this contention defendant argues that the existence of the metal pipe was merely a condition by which the plaintiff's injuries may have been aggravated. Defendant argues that it was the conduct of the driver of the vehicle in having the accident which was the proximate cause of plaintiff's injury and that the metal pipe cannot be said to be a concurrent cause thereof.

In many respects the issue of proximate cause is simply the other side of the coin with which we seek to determine "duty." Having said that there was a duty owing, plaintiff does not solve the problem of how we keep the defendant from incurring infinite liability. Thus, we seek that limitation in the morass of proximate cause and search for some reasonably close connection between the defendant's conduct and the injury. See Prosser, Law of Torts, pp. 288-298 (1964).

■■ The rule as to what constitutes proximate cause is virtually indisputable. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinary prudent person ought to have foreseen as likely to occur as a result of negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury that resulted from his acts. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) The question of what is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all the evidence. *Neering, supra; Ney v. Yellow Cab Co.* (1954), 2 Ill.2d 74, 117 N.E.2d 74.

■■ In order for a court to say as a matter of law that the omissions or acts of a party constitute a passive condition rather than a contributing proximate cause, there can be no room for any other reasonable inference from the facts. *Cohn v. Petroleum Heat & Power Co.* (1963), 44 Ill.App.2d 23, 194 N.E.2d 29.

■■ In the instant case it was a well pleaded fact that defendant had known of the existence of this obviously defective and dangerous instrumentality. We have already decided that the question of a duty of care owing from defendant to plaintiff was sufficiently raised by the complaint. Looking back to some of our previously cited examples, we cannot say there is no reasonable inference from the pleaded facts under which defendant would have foreseen such an injury occurring even though he might not have foreseen the precise manner in which it occurred. We think, therefore, that it cannot be said, as a matter of law, that the de-

fendant's conduct was not a proximate cause of plaintiff's injuries. Rather, such a determination should be left to a jury which has heard all the evidence. *Cohn, supra.*

We reverse the granting of the motion to dismiss and remand the cause to the trial court for proceedings not inconsistent with our opinion.

Reversed and remanded.

DEMPSEY and McNAMARA, JJ., concur.